UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
LUIS ALBERTO GRANDISON,                              :
                                                     :
                              Plaintiff,             :
                                                     :          **20 Civ. 3918**
              -against-                              :
                                                     :
THE NEW YORK RACING ASSOCIATION, INC. :
d/b/a NYRA,                                          :          **COMPLAINT**
                                                     :
                              Defendant.             :
-------------------------------------------------------------------- X

Plaintiff Luis Alberto Grandison ("Plaintiff" or "Grandison"), by his attorneys Pechman Law Group PLLC, complains of defendant The New York Racing Association, Inc. d/b/a NYRA ("NYRA") and alleges as follows:

## NATURE OF THE ACTION

1.      Grandison, a Black Latino from Panama, worked for six years at NYRA as the first ever full-time Spanish language horse racing announcer in the United States. Throughout his employment at NYRA, Grandison worked alongside white Americans who announced the same horse races in English.  Although Grandison and his fellow full-time race callers performed the same primary duty (*i.e.*, announcing), NYRA paid the white American race callers more than double Grandison's salary despite Grandison having just as much experience as them, working more months per year than they did, and performing additional advertising duties not required of them.

2.      Grandison brings this action seeking injunctive and declaratory relief against NYRA's unlawful discriminatory conduct and to recover damages, including punitive damages, for its unlawful discrimination against him on the basis of his race, color, and national origin pursuant to 42 U.S.C. § 1981 ("Section 1981"), the New York City Human Rights Law, Admin. Code § 8–107 *et seq.* ("NYCHRL"), the New York State

Pay Equity Law, New York Labor Law § 194 ("NYSPEL"), and the New York State Human Rights Law, New York State Executive Law § 296 *et seq.* ("NYSHRL").

## JURISDICTION

3.    This Court has subject matter jurisdiction of this case pursuant to 42 U.S.C. § 1981 and 28 U.S.C. § 1331, and it has supplemental jurisdiction over Grandison's claims under the NYCHRL, NYSPEL, and NYSHRL pursuant to 28 U.S.C. § 1367.

4.    Pursuant to Section 8–502(c) of the NYCHRL, Plaintiff will serve a copy of this Complaint on the City of New York Commission on Human Rights and the City of New York Corporation Counsel within ten days of commencement of this action.

## VENUE

5.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391.  A majority of the facts alleged in this Complaint occurred in Queens, New York.

## THE PARTIES

**Plaintiff Luis Alberto Grandison**

6.    Grandison resides in New York, New York.

7.    Defendant employed Grandison as a race caller, an announcer and/or broadcaster for horse races, from approximately March 14, 2014, to June 3, 2020.

8.    Throughout his employment, Grandison has been an employee of NYRA within the meaning of Section 1981, the NYCHRL, the NYSPEL, and the NYSHRL.

**Defendant New York Racing Association, Inc. d/b/a NYRA**

9.    Defendant The New York Racing Association, Inc. is a New York corporation that owns, operates, and does business as NYRA, headquartered in Jamaica, New York.

10.    NYRA was "[f]ounded in 1955" and is "franchised to run thoroughbred [horse] racing at New York's three major tracks (Aqueduct Racetrack, Belmont Park, and

Saratoga Race Course) through 2033," with its three horse race tracks serving as "the cornerstone of New York State's thoroughbred industry, which contributes more than $2 billion annually to its urban, suburban and rural economy." *See* www.nyrainc.com/about (last visited August 19, 2020).

11.     Races at NYRA take place in the Aqueduct Racetrack in Queens from approximately November to the beginning of April, at Belmont Park in Long Island from approximately April to mid-July and from September to November, and at Saratoga Race Course in upstate New York from approximately mid-July to Labor Day in September.

12.     NYRA is a nationally-recognized leader in the horse racing and betting industry.

13.     NYRA hired Grandison to serve as a Spanish language race caller in 2014.

14.     NYRA terminated Grandison's employment effective June 3, 2020.

15.     NYRA set Grandison's annual salary throughout his employment.

16.     NYRA set other full-time race callers' annual salaries throughout Grandison's employment.

17.     Throughout Grandison's employment, NYRA employed hundreds of employees.

18.     NYRA was Grandison's employer within the meanings of Section 1981, the NYCHRL, the NYSPEL, and the NYSHRL.

## FACTUAL ALLEGATIONS

**Grandison's Background and Work Experience**

19.     Grandison was born and raised in Panama.

20.     Grandison is a Black Latino and a native Spanish speaker.

21.     In approximately 1982, Grandison obtained a bachelor's degree from the University of Panama (Universidad de Panamá) in communications with a specialty in broadcasting in radio and television.

22.     Between the late 1970s and 2008, Grandison served as an announcer, horse race caller, and broadcaster in Panama, working at racetracks, with newspapers, and for radio stations such as ABC Radio, KW Continente and Radio Pan-Americana.

23.     Grandison called horse races at the Hipódromo Presidente Remón in Panama City for approximately twenty-five years, from 1977 to 2003.

24.     Grandison moved to the United States in 2009.

**Grandison Begins Working at NYRA**

25.     Grandison approached NYRA in 2011 about serving as a Spanish language announcer for horse races at NYRA's three racetracks.

26.     NYRA rejected Grandison's request and, instead, had him conduct interviews, especially with Spanish-speaking jockeys, on an *ad hoc* basis.

27.     After conducting approximately thirty interviews for NYRA, Grandison again approached NYRA about the possibility of working for it on a more permanent basis as a race caller.

28.     In 2014, NYRA agreed to have Grandison serve as the company's first ever Spanish language race caller.

29.     NYRA's then-President and CEO Chris Kay stated in an interview in approximately April 2014 as follows: "Luis [Grandison] is a talented and enthusiastic individual, and we are thrilled to hire him as the first year-round Spanish language thoroughbred racing announcer in the United States." *See* Press Release, Paulick Report, *NYRA to Become First U.S. Racetrack Operator to Provide Spanish Race Calls* (Apr. 3, 2014), *available at* https://www.paulickreport.com/news/the-biz/nyra-to-become-first-u-s-

racetrack-operator-to-provide-spanish-race-
calls/#:~:text=NYRA%20to%20Become%20First%20U.S.%20Racetrack%20Operator%20
to%20Provide%20Spanish%20Race%20Calls,-
Sponsored%20by%3A&text=%E2%80%9CLuis%20is%20a%20talented%20and,CEO%20
and%20President%20Chris%20Kay (last visited Aug. 24, 2020).

30.     Mr. Kay also stated in the same interview that horse racing "has a very large
and dedicated following in the Hispanic and Latino communities, and this important
initiative will help enhance and personalize the guest experience for our Spanish
speaking fan base."

31.     As the sole Spanish language race caller for NYRA, throughout his
employment, Grandison's broadcasts on the NYRA simulcast network were heard
throughout the United States and all of Latin America.

32.     By September 2016, Grandison's job was no longer a "novelty"; rather, "the
way Grandison's work has been enthusiastically embraced speaks volumes for its place
in American racing and raises the question of why NYRA—or another track for that
matter—did not address the feature sooner.  It seems to make all the sense in an ever-
changing world."  *See Meet the One-of-a-Kind Race-Caller Opening Up New Horizons for
NYRA* (Sept. 30, 2016), *available at* https://www.nyra.com/belmont/news/meet-the-
one-of-a-kind-race-caller-opening-up-new-horizons-for-nyra (last visited Aug. 24, 2020).

33.     In an interview in 2016, Richard Migliore, NYRA analyst and former jockey,
stated that it is "long overdue to have a Spanish announcer because so many people who
use Spanish as their first language love racing, so I think it's great he came on board and
I can't think of anyone better than Luis [Grandison] to fill that role."  *Id.*  In the interview,
Migliore added that Grandison's work has "been received very well."  *Id.*

34.     Dan Silver, then NYRA's Senior Director of Television, stated that "[t]horoughbred racing has a large and dedicated Spanish-speaking base and we [*i.e.*, NYRA] thought this was an important initiative to really enhance and personalize the guest experience. . . . It's actually a no-brainer with the following horse racing has in that community." *Id.*

35.     Silver went on to state in or about September 2016 that although there was no way to quantify the impact that Grandison's calls would have on wagering, "there are some indicators of success that extend beyond dollars and cents," and with Grandison NYRA was now able to "offer their races to tracks and simulcast outlets in areas such as the Caribbean, Central America and South America in a form that patrons can readily understand and which encourages them to wager." *Id.*

36.     Silver noted that Grandison "also has a Twitter account (@GrandisonLuis) that he uses to interact in Spanish with NYRA fans, improving relations with a segment of costumers who could feel disenfranchised because of the language barrier." *Id.*

37.     According to Larry Collmus, an English-speaking race caller who worked alongside Grandison for many years at NYRA (*see infra*), "A lot of our jockeys here speak Spanish and I'm sure they listen to Luis' calls more than mine." *Id.*

38.     By approximately 2018, news outlets reported that "Latinos have been fueling the horse racing industry; working the back end of the races.  At Belmont Park, Leonardo Parra, from Chile, has been working as a groom for eight years at the stables. He says most of his coworkers are Latinos, noting how much colleagues from countries like Panama, Venezuela, Mexico and Chile love horses." *Latinos Are Reshaping the Horse Racing Industry*, 5 CHICAGO (June 9, 2018), *available at* https://www.nbcchicago.com/news/national-international/latinos-are-reshaping-the-

horse-racing-industry/147832/?_osource=db_npd_nbc_wmaq_eml_shr (last visited Aug. 24, 2020).

39.     George Ortuzar, a former entertainment anchor for Univision who ran a week radio show in Spanish for the Santa Anita Park in Southern California, stated in 2018 that Grandison's success engaging a new Hispanic market opened the doors for other horse racetracks to add Spanish race callers: "For a racetrack to have someone like [Grandison] calling the races in Spanish is stellar and has helped the entire community." *Id.*

40.     According to Ortuzar, the industry needs "new blood to come into the racing world, and part of that is the Hispanic market." *Id.*

**Grandison's Experience vs. the Experience of Other Race Callers at NYRA**

41.     Grandison began working for NYRA as a race caller in April 2014.

42.     Grandison's starting annual salary was approximately $32,000.

43.     Each year, Grandison received positive or at least "meets expectations" performance reviews.

44.     Almost every year, Grandison received a merit-based raise, such that his final annual salary in 2020 was $60,000.

45.     Throughout his employment, Grandison worked year-round, except for when he went on vacation for eighteen days in December each year.

46.     Beginning in approximately 2015, Grandison was required to make a presentation each Thursday on NYRA's YouTube channel to provide a preview of the most important races to take place on Saturday that week.

47.     Grandison was also required to post about NYRA's upcoming races on Twitter and Facebook.

48.     For example, on or about August 10, 2018, Grandison posted on Twitter about Hispanic jockeys winning several consecutive races, which resulted in approximately 12,000 people responding to his tweet.

49.     In April 2014, Tom Durkin, a legendary race caller who retired from NYRA in approximately late 2014, introduced Grandison as the race caller who would work alongside him calling races in Spanish for the NYRA network.

50.     Tom Durkin is a white American man who performed the same primary race calling duty as Grandison, except in English.

51.     Tom Durkin did not present on NYRA's YouTube channel.

52.     Tom Durkin was not required to post about NYRA's races on social media platforms.

53.     Tom Durkin did not call races for NYRA during the winter season, from approximately November to the beginning of April each year.

54.     During the winter season, John G. Imbriale would replace Tom Durkin as a temporary English language race caller.

55.     Upon information and belief, NYRA paid Tom Durkin a salary of "$440,000 in 2014 for 100 days of calling races at NYRA tracks.  That includes $430,000 in base pay and an annual extra $10,000 stipend for working in Saratoga Springs, where he resides." *See Tom Durkin Paid $400,000 for 100 Days Calling Races in 2014*, TIMES UNION (Oct. 19, 2014), *available at* https://www.timesunion.com/local/article/He-called-the-shots-and-the-races-5833759.php (last visited Aug. 21, 2020).

56.     In approximately late 2014, Larry Collmus replaced Tom Durkin as NYRA's full-time English language race caller.

57.     Larry Collmus is a white American man who performed the same primary race calling duty as Grandison, except in English.

58.     Upon information and belief, Larry Collmus signed a five-year contract with NYRA to serve as its English language race caller.

59.     Upon information and belief, Larry Collmus began working as a race caller in approximately 1985, when he was eighteen years old.

60.     Upon information and belief, Larry Collmus did not obtain a college or university degree in broadcasting and/or communications.

61.     Larry Collmus did not perform race calling duties for NYRA during the winter season, from approximately November to the beginning of April each year.

62.     During the winter season, John G. Imbriale or other announcers would replace Larry Collmus as the temporary English language race caller.

63.     Larry Collmus was not required to present on NYRA's YouTube channel.

64.     Upon information and belief, NYRA paid Larry Collmus an annual salary in excess of $200,000.

65.     In 2020, John G. Imbriale replaced Larry Collmus as NYRA's full-time English language race caller.

66.     John G. Imbriale is a white American man who performed the same primary race calling duty as Grandison, except in English.

67.     Upon information and belief, NYRA pays John G. Imbriale an annual salary in excess of $200,000.

68.     Upon information and belief, NYRA still employs John G. Imbriale as its full-time English language race caller.

**Grandison Questions the Wage Disparity at NYRA**

69.     In August 2018, Grandison drafted a letter, dated August 14, 2018, addressed to Chris Kay and other upper management officials at NYRA stating:

I am writing to request an increase in my salary as a Spanish language race caller.

As you know, I have been a loyal employee of NYRA since 2011 when I began as a Spanish language interviewer of jockeys.  Since 2014 I have been calling races at all three NYRA tracks, year-round, including the calling of two Triple Crown races.

I am proud to be the main face of NYRA for the Hispanic community.  Although I just began to more fully utilize social media, I already have accumulated over 3,200 "followers" on Twitter and in July, I increased that number by over 400 followers.  This past Friday, in response to Hispanic jockeys winning consecutive races in an unprecedented way, I had 12,000 people responding to my celebratory tweet about the day.  Hundreds of Hispanics also watch my weekly Pick 4 show.  In other words, in addition to calling races year-round to at the three NYRA tracks, I am helping to increase handle and I am very motivated to more.

I love working for NYRA and very much want to help NYRA to increase its number of Hispanic customers.  I thank you for your attention to my request and look forward to your response.

70.     Before sending out the letter, Grandison gave a copy of it to his direct supervisors, Antoine Allevato, Executive Producer, and Eric Donovan, Director of TV and Broadcast Operations at NYRA.

71.     Grandison explained to them in person that his salary was far too low for a race caller in the United States.

72.     Allevato and Donovan, both white Americans, denied Grandison's request and told him never to send the letter to Chris Kay.

73.     Approximately two months later, in October 2018, Grandison met with Eric Donovan to explain that he should be paid a much higher annual salary, stating that an average horse race caller in New York makes far more than he did.

74.     Donovan rejected Grandison's request.

75.     NYRA furloughed Grandison's employment in March 2020, then terminated his employment effective June 3, 2020.

76.     NYRA currently operates out of its Saratoga racetrack location.

77.     NYRA did not replace Grandison with another announcer.

78.     To date, there is no longer a Spanish-speaking announcer at NYRA.

## FIRST CLAIM
### (Discrimination – 42 U.S.C. § 1981)

79.     Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

80.     Defendant was Plaintiff's employer within the meaning of Section 1981.

81.     Sections 1981(a) and 1981(b) provide:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

82.     Employment, including employment at will, is considered a "contract" that can be made and enforced under Section 1981.

83.     Defendant purposely discriminated against Plaintiff because of his Black and Latino/Hispanic racial background, thereby denying him equal terms and conditions of employment enjoyed by his white counterparts.

84.     As a direct and proximate result of its discriminatory action, Defendant paid Plaintiff significantly less than his white American counterparts, such as Larry Collmus, who performed the same race calling primary duty.

85.     Indeed, Defendant purposely continued this discriminatory conduct against Plaintiff throughout his employment even though Plaintiff performed additional duties, such as advertising presentations and social media postings, not required of white American race callers at NYRA.

86.     As a direct and proximate result of Defendant's discriminatory actions in violation of Section 1981, Plaintiff is entitled to recover the wages he should have been paid, punitive damages, and all other and further relief as the Court deems just and proper.

## SECOND CLAIM
### (Discrimination – New York City Human Rights Law)

87.     Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

88.     Defendant employed Plaintiff within the meaning of the NYCHRL.

89.     As set forth in this Complaint, Defendant purposely paid Plaintiff significantly reduced wages because of his race, color, and national origin.

90.     Defendant did so even though Plaintiff's white American colleagues, who performed the same primary work duty as Plaintiff, received significantly higher pay.

91.     As a result of Defendant's discriminatory conduct, Plaintiff is entitled to recover his economic losses, emotional distress damages, punitive damages, and any other and further relief as set forth by this Court.

### THIRD CLAIM
### (Discrimination – New York State Equity Pay Law)

92.     Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

93.     Effective October 8, 2019, the New York State Equity Pay Act, New York Labor Law § 194, provides as follows:

> No employee with status within one or more protected class or classes shall be paid a wage at a rate less than the rate at which an employee without status within the same protected class or classes in the same establishment is paid for: (a) equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions, or (b) substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions.

94.     Since October 9, 2019, Grandison has performed the exact same primary duty of race calling (*i.e.*, announcing or broadcasting horse races) at NYRA in Spanish that his white American counterparts performed in English in the same racetracks, under the same management, using the same oratory skills, and using the same NYRA simulcast network.

95.     The only difference between Grandison and, for example, Larry Collmus is that the former is a Black Latino speaking in Spanish whereas the latter is a white American speaking in English.  Their primary work duty of race calling was otherwise identical.

96.     Nevertheless, NYRA intentionally paid Grandison significantly less money than Collmus and Imbriale because of Grandison's race, color, and national origin.

97.     As a result of Defendant's unlawful discrimination against Grandison, he is entitled to recover his economic losses, emotional distress damages, and all other and further relief as this Court deems just and proper.

## FOURTH CLAIM
### (Discrimination – New York State Human Rights Law)

98.     Plaintiff repeats and incorporates all foregoing paragraphs as if fully set forth herein.

99.     Defendant employed Plaintiff within the meaning of the NYSHRL.

100.    Defendant discriminated against Plaintiff by paying him a significantly reduced salary when compared to his white American colleagues who performed the same primary race calling duty.  Defendant did so because of Plaintiff's race, color, and national origin, in violation of the NYSHRL.

101.    Defendant acted intentionally and maliciously, with reckless indifference to Plaintiff's statutorily protected rights.

102.    As a result of Defendant's unlawful conduct, Plaintiff is entitled to recover his economic losses, emotional distress, and any other and further relief as set forth by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

a.      declaring that Defendant's actions described in this Complaint violated Section 1981, the NYSHRL, the NYSPEL, and the NYCHRL;

b.      enjoining and permanently restraining Defendant's violations of Section 1981, the NYSHRL, the NYSPEL, and the NYCHRL;

c.      directing Defendant to pay Plaintiff compensatory damages, including damages for unlawful wage disparities;

d.      directing Defendant to pay Plaintiff damages for emotional distress and pain and suffering;

e.      directing Defendant to pay Plaintiff punitive damages as provided by Section 1981, the NYSHRL, the NYSPEL, and the NYCHRL;

f.      awarding Plaintiff his reasonable attorneys' fees and costs incurred in prosecuting this action;

g.      awarding Plaintiff pre- and post-judgment interest;

h.      awarding Plaintiff a tax enhancement award to offset adverse tax consequences associated with a lump sum award of damages; and

i.      awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        August 25, 2020

PECHMAN LAW GROUP PLLC

By:     s/ Louis Pechman
        Louis Pechman
        Gianfranco J. Cuadra
        488 Madison Avenue – 17th Floor
        New York, New York 10022
        Tel.: (212) 583-9500
        pechman@pechmanlaw.com
        cuadra@pechmanlaw.com
        Attorneys for Plaintiff